JS - 6

cc: see G - 75 attached

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAZIM MOHAMMED, ET. AL., | Case No. SA CV09-0079 DOC(ANx) |
| Plaintiff(s), | Orange County Superior Court Case No.:<br>30-2009-00116911 |
| v. | |
| WATSON PHARMACEUTICALS INC., ET. AL., | ORDER GRANTING MOTION TO REMAND |
| Defendant(s). | |

Before the Court is Plaintiffs', Kazim Mohammed, Individually and as Guardian *ad Litem* for Tyson Wilson, a Minor, Jasmine Mohammed, a Minor, and Aaron Mohammed, a Minor, Motion to Remand this case to the Superior Court of the State of California, County of Orange, pursuant to 28 U.S.C. § 1447(c) on the basis that this Court lacks subject matter jurisdiction (the "Motion"). The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, and for the reasons stated below, the Court hereby GRANTS the Motion.

## I. BACKGROUND

This is an action for the wrongful death of decedent, Melissa Mohammed, who died on January 13, 2008, from using an allegedly defective 100 mcg/hour Watson fentanyl patch prescribed

by a licensed physician for pain.  An autopsy revealed that Melissa died from fentanyl toxicity as a result of an excessive concentration of fentanyl in her blood.  Plaintiffs, Melissa's husband and her three minor children, brought suit against Watson Laboratories, Inc., Watson Pharmaceuticals, Inc., and Watson Pharma, Inc. (collectively, the "Watson Defendants") on January 6, 2009, in California state court, alleging strict products liability, negligence in the design, manufacture, and marketing of the fentanyl patches, and breach of warranty.  Plaintiffs allege that the Watson Defendants "designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold" the patches (complaint, ¶6).

Watson Pharma, Inc., a citizen of Delaware and New Jersey, removed this action to federal court on January 20, 2009.  At that time, none of the named defendants had been served with the complaint.  Watson Pharmaceuticals and Watson Laboratories are both citizens of Nevada and California.  Watson Pharma and Watson Laboratories are subsidiaries of the parent company Watson Pharmaceuticals.  In its Notice of Removal, Watson Pharma states that removal is proper under 28 U.S.C. § 1441(b) because none of the forum defendants (i.e. Watson Pharmaceuticals and Watson Laboratories) had been served with the complaint prior to removal (Notice of Removal, ¶15).  Plaintiffs claim to have served the Defendants as of February 9, 2009.[1]  Plaintiffs brought the instant Motion to Remand, ten days later, arguing that the Court should not employ a literal interpretation of the "and served" language under Section 1441(b).

**II. LEGAL STANDARD**

Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure.  28 U.S.C. § 1447(c).  Removal of state actions is allowed only if the plaintiff could have originally filed the action in federal court.  *See* 28 U.S.C. § 1441.  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."  *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) (overruled on other grounds); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

---

[1]Due to the interrelationship between the defendants, service was effectively made on all three, forum and non-forum, at once.  Indeed, the agent for service of process of all three entities is the same woman, Margaret Wilson.  See Docket Nos. 19, 20, and 21.

2

1    Further, a court does not consider the citizenship of a "fraudulently joined" defendant when

2    determining whether complete diversity exists such that removal is proper pursuant to 28 U.S.C. §

3    1441(b). *Morris v Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn*

4    *Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). A defendant is "fraudulently joined" when "the

5    plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious

6    according to the settled rules of the state." *Morris*, 236 F.3d at 1067 (quoting *McCabe v Gen. Foods*

7    *Corp.*, 811 F.2d 1136, 1339 (9th Cir. 1987). The removing defendant may submit facts showing that

8    a resident defendant has no real connection with the action. *Ritchey*, 139 F.3d at 1319.

9    **III. DISCUSSION**

10    The parties dispute whether removal was proper under Section 1441(b) when Plaintiffs had

11    not effectuated service of any Defendants. Plaintiffs contend that this Court should still find that

12    the forum defendant rule prohibits removal under these circumstances, whereas Defendants contend

13    that a literal application of Section 1441(b) allows for such removal. They also dispute whether the

14    forum defendants in this action were fraudulently joined. For the following reasons, the Court finds

15    for Plaintiffs and remands this action to state court.

16    **A. "[A]nd served" Requirement under Section 1441(b)**

17    Neither party contests that this action could have originally been filed in federal court

18    pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, and the action is

19    between citizens of different states. However, even if such diversity jurisdiction is present, 28

20    U.S.C. § 1441(b) prohibits removal if one or more of the named defendants is a citizen of the forum

21    state, California in the instant action. The statute states, in pertinent part, that a case can be removed

22    based on diversity jurisdiction "only if none of the parties in interest properly joined *and served* as

23    defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis

24    added); *see also Lively v. Wild Oats Mkts.*, 456 F.3d 933, 939 (9th Cir. 2006). Known as the "forum

25    defendant rule," the parties dispute how it applies (or should apply) to the instant case.

26    Plaintiffs bring their motion based on the "and served" language in 28 U.S.C. § 1441(b), claiming

27    that the forum defendant rule should still apply to prohibit removal here. It is undisputed that

28    Watson Pharma, the only non-forum defendant, removed the action prior to any defendant receiving

3

1   service of process.  Indeed, the complaint was filed on January 6, 2009.  Defendant Watson Pharma

2   removed the case to this Court fourteen (14) days later on January 20, 2009.  Plaintiffs allege that

3   they effectuated service of process simultaneously on all defendants a little over two weeks later on

4   February 9, 2009.  Plaintiffs then brought their Motion to Remand on February 19, 2009.

5        As Plaintiffs point out, the Watson Defendants argue that the plain language of the "joined

6   and served" provision allows for removal in these circumstances.  However, Plaintiffs indicate that

7   federal district courts are split on the proper interpretation of the "and served" language.  While

8   many courts adhere to the plain language argument as advanced by the Watson Defendants, others

9   hold that a literal interpretation of the provision runs contrary to congressional intent and the

10  purpose behind the forum defendant rule.  The Ninth Circuit has yet to address the issue.

11       Recognizing the district court split and the lack of binding authority on this Court, the Court

12  proceeds to depart from a literal interpretation of Section 1441(b), reasoning that such an

13  interpretation in these circumstances thwarts the purpose of Section 1441(b) and merely promotes

14  gamesmanship on the part of removing defendants.  In so finding, the Court agrees with district

15  courts that have found Section 1441(b) is not implicated where the non-forum defendant (or forum

16  defendant) seeks to remove the action prior to the service of any defendant.  *See e.g. Holmstrom v.*

17  *Harad*, No. 05 C 2714, 2005 WL 1950672, at *2 (N.D.Ill. Aug. 11, 2005) (finding that "the policy

18  of the 'joined and served' requirement is not implicated in this situation....When no defendant has

19  been served, however, the non-forum defendant stands on equal footing as the forum

20  defendant....[T]he protection afforded by the 'joined and served' requirement is wholly unnecessary

21  for an unserved non-forum defendant."); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, No.

22  Civ. A. 3:97-CV-0945-P, 1998 WL 119528, at *3, n.3 (N.D.Tex. March 5, 2008); *Sullivan v.*

23  *Novartis Pharmaceuticals Corp.*, 575 F. Supp. 2d 640, 646 (D.N.J. 2008); *Oxendine v. Merck and*

24  *Co., Inc.*, 236 F. Supp. 2d 517, 524-5 (D.Md. 2002); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734-

25  5 (N.D.Ill. 2007).

26       The purpose behind the forum defendant rule and its resulting limit on removal relates to the

27  rationale for diversity jurisdiction.  As the Ninth Circuit has stated, "Removal based on diversity

28

4

jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court....The need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought.  Within this contextual framework, the forum defendant rule allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court."  *Lively*, 456 F.3d at 940.  Thus, the overarching purpose of the forum defendant rule is to prevent certain cases properly brought in state court from ending up in federal court.

       As the *Sullivan* Court noted, the "properly joined and served" language of the forum defendant rule was not originally part of the statutory text but was added through amendment in 1948.  *Sullivan*, 575 F. Supp. 2d at 644.  Despite a thorough search of the legislative history, the *Sullivan* Court could not find any explicit discussion of the purpose for the added language.  *Id*. Despite the congressional silence, the *Sullivan* Court reasoned that "the purpose of the 'properly joined and served' requirement of section 1441(b) is abundantly clear in light of the historical development of the policy of the remand provisions, the practical application of the 'joined and served' provision by district courts in recent decades, and common sense."  *Id*.  That apparent purpose, as identified by the *Sullivan* Court and many other district courts, is to prevent plaintiffs from improperly joining forum defendants that they do not actually intend to pursue in order to prevent removal from state court under Section 1441(b), a pervasive problem at the time of the amendment.  *Id*. at 645; *see also Stan Winston Creatures, Inc. v. Toys R Us, Inc.,* 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) ("The purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."); *Brown v. Organon USA Inc.*, No. Civ. A. 07-3092(HAA), Civ. A. 07-5253(HAA), Civ. A. 07-5916(HAA), 2008 WL 2625355, at *7 (D.N.J. June 27, 2008); *Allen v. GlaxoSmithKline PLC*, No. 07-5045, 2008 WL 2247067, at *6 (E.D.Pa. May 30, 2008); *DeAngelo-Shuayto v. Organon USA Inc.*, No. 07-2923, 2007 WL 4365311, at * 1; *In re Aredia and Zometa Products Liability Litigation*, No. 3:06-MD-1760, 2007 WL 2905247, at * 2 (M.D.Tenn. Oct. 3, 2007); *Vivas v. Boeing Co.*, 486 F. Supp. 2d at 734.  Thus, the "joined and

1   served" language was meant to prevent plaintiffs from improperly exploiting the limits on removal

2   as generally provided for under the forum defendant rule.

3         The Court agrees with Plaintiffs that if the purpose behind the statute is to prevent procedural

4   gamesmanship by plaintiffs through improper joinder, a literal interpretation of the "joined and

5   served" provision that promotes such gamesmanship by defendants through allowing removal before

6   a plaintiff has a meaningful chance to serve any defendant both undermines the general purpose of

7   the forum defendant rule (i.e. to keep certain cases in state court) and inappropriately prevents

8   plaintiffs from litigating in the forum of their choice.  *See* O*xendine*, 236 F. Supp. 2d at 524

9   ("removability can not rationally turn on the timing or sequence of service of process"); *Vivas*, 486

10  F. Supp. 2d at 734 ("[T]o allow a resident defendant to remove a case before a plaintiff even has a

11  chance to serve him would provide a vehicle for defendants to manipulate the operation of the

12  removal statutes.  Allowing either party to do that would be against what the courts have long

13  understood to be Congress's intent."); *Brown v. Organon Int'l. Inc., et al.*, Nos. 07-3092 (HAA),

14  07-3456(HAA), 08-2021(HAA), 2008 WL 2833294, at *4 (D.N.J. July 21, 2008) (holding that a

15  literal interpretation of Section 1441(b) promotes defendant gamesmanship by "allow[ing]

16  defendants to avoid the imposition of the forum defendant rule as long as they are monitoring state

17  dockets and avoiding service"); *Sullivan*, 575 F. Supp. 2d at 647 ("[G]iven that the purpose of the

18  'properly joined and served' language is to prevent one form of gamesmanship - improper joinder -

19  the court finds that allowing defendant to engage another type of gamesmanship - a hasty filing of

20  a notice of removal - is demonstrably at odds with Congressional intent.").

21        In such circumstances, the Court is allowed to depart from the plain meaning of the statute,

22  as many district courts have done in interpreting the same statutory provision:

23        When the meaning has led to absurd or futile results, however, this

24        Court has looked beyond the words to the purpose of the act.

25        Frequently, even when the plain meaning did not produce absurd results

26        but merely an unreasonable one 'plainly at variance with the policy of

27        the legislation as a whole' this Court has followed that purpose, rather

28

1    than the literal words.

2    *U.S. v. Am. Trucking Ass'ns*, 310 U.S. 534, 543, 60 S. Ct. 1059 (1940).

3         At a minimum, this Court finds that a plain meaning interpretation of the statute

4    produces unreasonable results at variance with the policy of the legislation as a whole.  The purpose

5    of the statute is to prevent gamesmanship by plaintiffs and should not allow for a similar

6    gamesmanship by defendants.  Further, as stated above, "[t]he result of blindly applying the plain

7    'properly joined and served' language of section 1441(b) is to eviscerate the purpose of the forum

8    defendant rule, " as defendants could effectively always prevent imposition of the forum defendant

9    rule by monitoring state dockets and removing an action before a plaintiff can serve any party.

10   *Sullivan*, 575 F. Supp. 2d at 646-7.

11        Further, to the extent Defendants suggest, through their reliance on *Gecht*, that if Congress

12   had wanted to prevent removal in these circumstances, it could have so stated and thus the plain

13   language interpretation should hold, this Court rejects such an argument for the same reasons

14   articulated by the S*ullivan* Court.  In *Gecht*, a Northern District of California Court rejected any

15   argument that the purpose of the statute should prevent removal by a defendant when the plaintiff

16   has not had a meaningful opportunity to serve any defendant:

17             [I]f Congress had wanted to ensure that removal would not be

18             appropriate until it was clear that Plaintiff was trying to prevent

19             removal by speciously naming resident defendants, Congress could

20             have provided that no removal petition could be filed until one or more

21             nonresident defendant had been joined and served.  The statute also

22             could have been written to give a plaintiff, e.g. 30 or 60 days to effect

23             service before permitting a defendant to remove.

24   *City of Ann Arbor Employees' Retirement System v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568,

25   at *9 (N.D.Cal. March 9, 2007).  However, as the *Sullivan* Court astutely points out, a Congress

26   sitting in the 1940s could not have adequately had these concerns in mind:

27             Congress could not have anticipated the tremendous loophole that

28

7

1  would one day manifest from technology enabling forum defendants to
2  circumvent the forum defendant rule by, inter alia, electronically
3  monitoring the state court dockets. Thus, Congress would have had no
4  thought to wording the statute with this modern problem in mind.

5  *Sullivan*, 575 F. Supp. 2d at 645. Following this logic, the Court agrees that a literal interpretation
6  of Section 1441(b) disrupts the policy behind the forum defendant rule.

7  Thus, in line with *Holstrom* and district courts following it, the Court finds that removal
8  under Section 1441(b) by a non-forum defendant where no defendants have yet been served is
9  improper because it promotes gamesmanship by defendants and likely deprives plaintiffs of a
10 meaningful opportunity to effectuate service. As a result, the "joined and served" requirements of
11 Section 1441(b) are not implicated by the facts of the instant case where none of the Watson
12 Defendants had been served prior to removal, and pursuant to *Holstrom*, removal was improper at
13 this stage. The Court considers that its outcome here is also in line with Ninth Circuit precedent
14 recognizing that statutory procedures for removal are to be strictly construed against removal and
15 that there is a strong presumption against removal. *Abrego Abrego v. The Dow Chemical Co.*, 443
16 F.3d 676, 685 (9th Cir. 2006); *Gaus*, 980 F.2d at 566.

17 **B. Fraudulent Joinder**

18 Defendants argue, in the alternative, that the forum defendants Watson Pharmaceuticals and
19 Watson Laboratories are fraudulently joined parties, implicating the "properly joined" language of
20 Section 1441(b). As a result, this Court should disregard their citizenship for diversity purposes and
21 removal regardless of the "and served" language. However, for the following reasons, the Court
22 rejects such an argument.

23 Plaintiffs first contend that the Watson Defendants waived the right to argue fraudulent
24 joinder because Watson Pharma's Notice of Removal did not explicitly identify fraudulent joinder
25 as a basis for removal. Instead, Watson Pharma indicated that removal was proper under Section
26 1441(b) because no forum defendant had yet been served with the complaint. Noting that removal
27 must take place within 30 days of receipt of the complaint, 28 U.S.C. § 1446(b), Plaintiffs point out

28

that any amendment to the Notice of Removal can be made after the 30-day clock has run only if the amendment corrects defective allegations of jurisdiction; amendments after 30 days cannot add a new substantive basis for removal. *ARCO Envtl. Remediation, L.L.C. v Dep't of Health and Envtl. Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000).   A number of district courts have found that allegations of fraudulent joinder constitute a new substantive basis for removal and must be raised before the thirty-day window expires. *See Tincher v. Ins. Co. of State of Penn.*, 268 F. Supp. 2d 666, 667-8 (E.D.Va. 2003); *Dean Witter Reynolds, Inc. v. Swett & Crawford*, No. C-92-3841-JPV, 1992 U.S. Dist. LEXIS 20093, at *2-3 (N.D.Cal. Dec. 23, 1992); *Cohen v. GTE Gov't Syss. Corp.*, No C-92-20783, 1993 U.S. Dist. LEXIS 7914, at *4-5 (N.D.Cal. Apr. 6, 1993).   Plaintiffs do not make it clear if they are suggesting that the 30-day time frame should run from the date Watson Pharma removed (January 20, 2009) or from the date Plaintiffs served all three Defendants (February 9, 2009).   However, in either case, Defendants did not raise their fraudulent joinder argument until March 16, 2009, 30 days past either date.   Thus, they may have waived this argument.

Yet, even if the Watson Defendants did not waive their right to argue fraudulent joinder, the Court finds that they have not met their heavy burden of demonstrating that Watson Laboratories and Watson Pharmaceuticals were fraudulently joined.   A party is only deemed to have been "joined 'fraudulently' if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Kalawe v. KFC Nat. Mgmt. Co.*, Civ. No. 90-007799, 1991 WL 338566, at *2 (D. Hawaii July 16, 1991) (*citing Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989).   Further, "'district courts must not 'pretry' substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 204 (5th Cir. 1983) (*quoting B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 546 (5th Cir. 1981)).   "The question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question." *Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000).   "There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined

1    a party carry a heavy burden of persuasion." *Plute v. Roadway Package System, Inc.*, 141 F. Supp.

2    2d 1005, 1008 (N.D.Cal. 2001) (*citing Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709,

3    712 n.3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

4         Defendants contend that Plaintiffs have no viable claims against Watson Laboratories

5    because the Watson Laboratories based out of Corona, California is not the Watson

6    Pharmaceutical's subsidiary that manufactured fentanyl patches.  Instead, Defendants allege that the

7    Watson Laboratories based out of Utah is the actual subsidiary that manufactures fentanyl patches.

8    However, Plaintiffs present evidence suggesting that the Corona-based Watson Laboratories was

9    in fact involved in the manufacturing of the fentanyl patches.  Plaintiffs provide the Court with a

10   copy of the "Full Prescribing Information" that accompanies every box of 100 mcg/hr fentanyl

11   patches obtained from Watson Pharmaceuticals' website that states the patches are "Manufactured

12   by: Watson Laboratories, Inc., Corona, CA 92880 USA."  Dec. of James Craig Orr, Jr. in Sup. of

13   Reply ("Orr Dec."), ¶2, Exh. A.   Plaintiffs also provide a snapshot from the Watson

14   Pharmaceuticals' website of the packaging of a 75 mcg/hr fentanyl patch that includes the text

15   "Watson Laboratories, Inc. Corona, CA 92880 USA."  Id. at ¶3, Exh. B.  This evidence at least

16   suggests that the Watson Laboratories based out of Corona, California and named as a defendant

17   in the instant action participates in the manufacturing of fentanyl patches.  Thus, Plaintiffs have the

18   possibility of recovering against the forum defendant Watson Laboratories for strict products

19   liability, negligence, and/or breach of warranty.

20         Defendants also argue that any alleged liability on behalf of Watson Pharma (the entity that

21   they concede sells and distributes fentanyl patches) cannot be attributed to the parent company

22   Watson Pharmaceuticals, citing the general rule that the existence of a parent-subsidiary relationship

23   alone is not enough to attribute the liability of the subsidiary to the parent. *Doe v. Unocal Corp.*,

24   248 F.3d 915, 925-6 (9th Cir. 2001).  Defendants contend that Watson Pharmaceuticals does not

25   design, manufacture, market, or distribute fentanyl patches, but provide no evidence regarding the

26   nature of its relationship with Watson Pharma.  As Plaintiffs point out, the general rule identified

27

28                                                    10

by Defendants is subject to exceptions when the parent company asserts extensive control over its subsidiary, has a principal/agent relationship with its subsidiary, or when the subsidiary performs services sufficiently important to the parent such that the parent would perform them in the subsidiaries absence. *See Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1235-6 (N.D.Cal. 2004); *E. & J. Gallo Winery v. EnCana Energy Servs.*, No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *11 (E.D.Cal. May 27, 2008); *Unocal Corp.*, 248 F.3d at 926, 928.  With virtually no evidence presented by Defendants, Plaintiffs present evidence that suggests Watson Pharmaceuticals is in fact involved in the manufacture, marketing, and/or distribution of fentanyl patches or at least might have a closer relationship with its subsidiaries than it contends.  For example, on its website, Watson Pharmaceuticals identifies itself as "a leading specialty pharmaceutical company that develops, manufactures, markets, sells and distributes brand and generic pharmaceutical products." Orr Dec., ¶ 5, Exh. D.  Further, fentanyl patches are listed in Watson Pharmaceuticals' online "Product Database." *Id.* at ¶ 6, Exh. E.  Watson Pharmaceuticals also was the entity that recalled a number of defective fentanyl patches on August 8, 2008. Id. at ¶ 7, Exh. F.  Thus, considering the strong presumption against finding fraudulent joinder, the Court cannot conclude that there is no possibility Plaintiffs could recover from forum defendant Watson Pharmaceuticals.  As a result, fraudulent joinder cannot form a basis for this Court to deny remand.

**IV.  DISPOSITION**

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion to Remand.


IT IS SO ORDERED


DATED: March 26, 2009

_David O. Carter_

DAVID O. CARTER
United States District Judge